**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Molly Danahy*
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org

**BARTON MENDEZ SOTO PLLC**
James E. Barton II, AZ Bar No. 023888
401 W. Baseline Road
Suite 205
Tempe, AZ 85283
480-418-0668
james@bartonmendezsoto.com

*Attorneys for Plaintiffs*

*pro hac vice motion forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Living United for Change in Arizona; League of United Latin American Citizens; Arizona Students' Association; ADRC Action;<br><br>    *Plaintiffs*,<br><br>    v.<br><br>Katie Hobbs, in her official capacity as Secretary of State of Arizona,<br><br>    *Defendant*. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## COMPLAINT

1. On March 30, 2022, Governor Doug Ducey of Arizona signed into law House Bill 2492 ("HB 2492"), which imposes a host of arbitrary and discriminatory burdens on eligible Arizona voters in violation of the United States Constitution, the Civil Rights Act of 1964 (CRA), and the National Voter Registration Act (NVRA).

2. HB 2492 was adopted in explicit defiance of federal law and the United States Constitution. After nonpartisan legal staff advised the Arizona legislature that the law likely violates federal law, one of the bill's proponents expressly acknowledged that defiance is a purpose of HB 2492.

3. Among other violative provisions, HB 2492 conditions eligible voters' ability to exercise their rights to register and to vote based solely on the voter's seemingly inconsequential choice to use state or federal voter registration form.

4. HB 2492 further conditions eligibility to register and vote on whether voters have or can obtain documentary evidence of their U.S. citizenship and current residence, despite voters already attesting to these facts under penalty of perjury. These logistical and administrative barriers are directly at odds with federal law.

5. HB 2492 severely restricts the right to vote for a class of eligible, registered voters on Arizona's "Federal only" voters list. Under federal law, these voters are entitled to register and vote in federal elections, even when they cannot provide documentary proof of citizenship.

6.     But HB 2492 prohibits eligible Federal only voters from voting by mail, regardless of whether they are physically present, or from otherwise using Arizona's early voting system.

7.     In an extraordinary step that defies any conception of popular sovereignty, HB 2492 explicitly deprives eligible Federal only voters of their ability to vote for the President of the United States.

8.     No other state in the nation has abridged the fundamental right to vote for eligible voters in a such a manner.

9.     HB 2492 intentionally discriminates against naturalized U.S. citizens.

10.    HB 2492 mandates criminal investigation and prosecution of certain lawful registrants based on outdated citizenship data from unreliable sources.

11.    It is well established that the use of outdated citizenship data in voter registration discriminates against naturalized U.S. citizens by imposing burdens on such voters to establish their eligibility that are, by definition, not imposed on native-born U.S. citizens.

12.    HB 2492 also mandates that voters provide their "place of birth" on their voter registration form even though where someone was born has no connection to any voter qualification under Arizona law.

13.    Conditioning voter registration on the provision of information that is immaterial to a voter's eligibility to vote violates federal law and serves no purpose other than to single out naturalized U.S. citizens for harassment, including by election and law enforcement officials.

14.     Plaintiffs Living United for Change in Arizona ("LUCHA"), League of United Latin American Citizens ("LULAC"), Arizona Students' Association ("ASA"), and ADRC Action ("ADRC") bring this Complaint for Declaratory and Injunctive Relief to remedy the violations alleged herein.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

16.     This Court has personal jurisdiction over Defendant Secretary of State Hobbs, an elected constitutional officer for and resident of the State of Arizona.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

18.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL AND LEGAL BACKGROUND

19.     HB 2492 imposes a host of severe, unnecessary, and discriminatory burdens on Arizona voters at both the registration and voting stages.

20.     HB 2492 compels all Arizonans to supply documentary proof of residence to register to vote in any election.

21.     It requires officials to reject voter registration applications if the voter declines to provide their place of birth, even though the location of a voter's birth has no bearing on voter eligibility.

22.     HB 2492 requires documentary proof of U.S. citizenship as an eligibility requirement to register and vote and conditions a voter's ability to register and vote based solely on which type of voter registration form a voter happens to submit.

23.     It relegates a group of eligible, registered voters to second-class status by imposing arbitrary limits on how and in which elections they may vote.

24.     HB 2492 forces election officials to improperly reject voter registration applications from naturalized U.S. citizen based on outdated and unreliable data, or else face felony prosecution.

25.     Finally, it subjects eligible, registered voters to criminal investigation and harassment by the Arizona Attorney General under a vague and overbroad mandate to investigate and prosecute certain eligible, registered voters, based on their purported identification as potential non-U.S. citizens using inaccurate and outdated citizenship data.

26.     HB 2492's burdensome, arbitrary, and discriminatory provisions serve no meaningful governmental purpose.

27.     Rather than providing election officials with reliable means to identify ineligible voters, the new law will instead make it more difficult for eligible Arizonans to register and vote, including naturalized U.S. citizens, Tribal members, college and university students, low-income voters, elderly voters, racial and ethnic minorities, voters who move frequently, and voters who have changed their legal name, such as married women.

***Documentary Proof of Residence***

28.     HB 2492 violates federal law by requiring that all eligible Arizona voters provide documentary proof of residence ("DPOR") to register to vote in any elections.

29.     DPOR is defined as "an identifying document that establishes proof of location of residence." Under the statute, "a valid and unexpired Arizona Driver License or nonoperating identification number that is properly verified by the county recorder satisfies the requirements of this section."

30.     In addition, the statute states that "any of the identifying documents" required for identification while voting under Arizona Statute § 16-123 "constitutes satisfactory proof of location of residence." Those documents are:

(a) A valid form of identification that bears the photograph, name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including an Arizona driver license, an Arizona nonoperating identification license, a tribal enrollment card or other form of tribal identification or a United States federal, state or local government issued identification. Identification is deemed valid unless it can be determined on its face that it has expired.

(b) Two different items that contain the name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including a utility bill, a bank or credit union statement that is dated within ninety days of the date of the election, a valid Arizona vehicle registration, an Arizona vehicle insurance card, an Indian census card, tribal enrollment card or other form of tribal identification, a property tax statement, a recorder's certificate, a voter registration card, a valid United States federal, state or local government issued identification or any mailing that is labeled as "official election material". Identification is deemed valid unless it can be determined on its face that it has expired.

(c) A valid form of identification that bears the photograph, name and address of the elector except that if the address on the identification does not reasonably appear to be the same as the address in the precinct register or the identification is a valid United States military identification card or a valid United States passport and does not bear an address, the identification must

be accompanied by one of the items listed in subdivision (b) of this paragraph.

31.     All voters in Arizona registering to vote must attest their legal residence under the penalty of perjury. And under existing law, documentation of residence is already provided at the time of voting when necessary.

32.     HB 2492's DPOR Requirement imposes new and duplicative burdens on voters to access or obtain, copy, and submit the required documents at the time they register.

33.     The DPOR Requirement will most affect Arizonans who lack a valid Arizona driver's license or nonoperating state-ID card and will have a more difficult time accessing and providing the documentation to prove their residence. These disparately burdened Arizonans include low-income voters, college and university students, Tribal members, and voters who frequently move.

34.     In recognition of the particular burdens Native voters would otherwise face, under a stipulation in *Gonzalez v. Arizona*, members of federally recognized Indian tribes are entitled to present tribal identification at the polls that does not meet the requirements of Arizona Statute § 16-579.

35.     The new DPOR Requirement for voter registration under HB 2492 contains no accommodation for tribal identification that does not include an address or otherwise does not meet the requirements of Arizona Statute § 16-579.

36.     As a result, Tribal voters who have identification sufficient to enable them to cast a ballot under the *Gonzalez* stipulation may nonetheless be prohibited from registering to vote under HB 2492.

37.     The DPOR Requirement makes no provision for how people experiencing homelessness can comply with its mandates and register to vote.

38.     The DPOR Requirement will also burden voters who would otherwise take advantage of voter registration drives.

39.     Additional documentation requirements for registration beyond a standardized form make traditional voter registration activity nearly impossible. Potential voters often do not carry documentary proof of residence with them while out in the community. And those conducting voter registration drives cannot easily incorporate the equipment needed to copy such documentation for submission with paper voter registration forms.

40.     Arizona voters may register to vote using either the Arizona Voter Registration Form ("State Form") or the National Mail Voter Registration Form ("Federal Form"), which is promulgated by the U.S. Election Assistance Commission ("EAC") under the NVRA.

41.     Arizona voters may also register online (if they have an Arizona Driver's License and/or an Arizona non-operating I.D. card issued by the Motor Vehicle Division), in person at a County Recorder's office, or at a number of NVRA-mandated public agencies.

42.     Under the NVRA, all states must "accept and use" the Federal Form, which only requires attestation of residence and does not require documentary proof of residence. 52 U.S.C. § 20505.

43.     The NVRA preempts any attempt by states to impose additional requirements to prove citizenship, residence, or any other qualification above and beyond those provided by the Federal Form.

44.     HB 2492 seeks to impose a DPOR Requirement on registrants using the Federal Form.

45.     The Supreme Court rejected Arizona's attempt to impose a documentary proof of citizenship (DPOC) requirement on registrants using the Federal Form less than a decade ago. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 18 (2013) (holding the NVRA's requirement that states "accept and use" the Federal Form "acts as both a ceiling and a floor" for registering to vote in federal elections).

46.     Arizona's DPOR Requirement for registrants using the Federal Form is preempted by the NVRA under *Inter Tribal Council*.

47.     HB 2492's DPOR Requirement prohibits county election officials from registering otherwise eligible voters—including those who submitted a completed Federal Form—unless they provide DPOR, in flagrant violation of federal law.

***Birthplace Requirement***

48.     HB 2492 mandates that eligible Arizonans provide their birthplace when registering to vote and directs county election officials not to register voters who fail to list their place of birth. Ariz. Rev. Stat. § 16-121.01.

49.     A voter's birthplace is wholly immaterial to their qualifications to vote. Arizona's voter qualifications require that a person be eighteen years old, a current U.S. citizen, and a current resident of Arizona and the specific jurisdiction in which they are registering to vote.

50.     HB2492 imposes an additional qualification that Arizona voters be able to obtain and provide documentary proof of citizenship.

51.     Arizona has no legitimate reason to require potential voters to disclose their place of birth to register to vote. A person's place of birth has no bearing whether they are eighteen, a resident of Arizona and the specific jurisdiction in which they are registering, or currently citizen of the United States.

52.     This requirement, combined with HB 2492's other provisions that mandate aggressive investigation and prosecution of alleged noncitizens (based on faulty data that will inevitably target naturalized citizens), demonstrates that HB 2492's Birthplace Requirement is intended to, and will, intimidate eligible voters born outside of the United States.

53.     HB 2492's Birthplace Requirement unlawfully discriminates against naturalized U.S. citizen voters based on their country of origin by requiring such voters to disclose not just that they are U.S. citizens but that they are naturalized U.S. citizens.

54.     The Federal Form does not require, or include a space for, voters to identify their place of birth at all, because it is not relevant to any lawful voter qualification.

55.     To the extent HB 2492 seeks to impose the Birthplace Requirement on Federal Form applicants, it is preempted by the NVRA.

56.     The NVRA also requires certain mandated public assistance agencies to provide voter registration services using the Federal Form or "its equivalent." 52 U.S.C. § 20506.

57.     To the extent HB 2492 seeks to impose the Birthplace Requirement on applicants registering at NVRA-mandated agencies, it is preempted by the NVRA.

58.     Under the NVRA, a voter registration application provided at a state's motor vehicle authority may require only the minimum amount of information necessary to "(i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20504.

59.     The Arizona Motor Vehicle Division implements these provisions, and the Birthplace Requirement is preempted by the NVRA to the extent it is inconsistent with the Motor Vehicle Division's federal voter registration obligations.

60.     The Birthplace Requirement violates the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), by denying the right to register and to vote to eligible Arizonans who omit their place of birth from their voter registration application, because a person's place of birth is immaterial to determining whether an individual is eligible to vote in Arizona.

### *Documentary Proof of U.S. Citizenship*

61.     HB 2492 violates federal law by requiring Arizonans to provide documentary proof of U.S. citizenship ("DPOC") as an eligibility requirement to register and to vote.

62.     Arizona is the only state in the country that enforces a DPOC requirement for citizens to register and vote.

63.    HB 2492's DPOC Requirements impose additional severe, undue, and discriminatory burdens on the right to vote for eligible Arizonans who lack DPOC.

64.    Per expert estimates, as much as seven percent of United States citizens lack ready access to citizenship documents. In Arizona, this means that as many as 353,495 eligible voters lack DPOC.

65.    HB 2492 would deny these eligible voters their rights to register and to vote.

66.    Arizona's attempt to impose documentary proof of citizenship requirements on its voters has a substantial history in the federal courts.

67.    In 2004, Arizona enacted Proposition 200, which, among other things, imposed a documentary proof of citizenship requirement for voter registration.

68.    After Proposition 200's passage, the EAC denied Arizona's request to include its DPOC requirement in the state-specific instructions for voter registration in Arizona on the Federal Form.

69.    After years of litigation, the Supreme Court held that the NVRA's requirement that states "accept and use" the Federal Form preempted Arizona's DPOC requirement under Proposition 200 as applied to the Federal Form. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 18 (2013)

70.    Rather than abandoning the Proposition 200 DPOC requirement in light of the Supreme Court's decision (as several other states did), Arizona enacted a dual voter registration system allowing it to enforce its DPOC requirement only for state and local elections. Ariz. Op. Atty. Gen. No. I13-011 (2013).

71.     From 2014 to 2018, Arizona operated this dual voter registration system in a manner that not only imposed the undue burden of documentary proof of citizenship on eligible voters but also arbitrarily disenfranchised tens of thousands of voters depending solely on whether registered using the State Form or the Federal Form.

72.     If the voter completed the Federal Form without DPOC, the voter was registered to vote in federal elections but not state elections and advised to submit DPOC to vote in state elections. These voters were assigned to the Federal-Only Voter List.

73.     If the voter applied using either a State Form or a Federal Form and did supply DPOC, they could vote in all eligible local, state, and federal elections. These voters were assigned to the Full Ballot Voter List.

74.     If the voter completed the State Form without DPOC, the voter was not registered for state or federal elections and, in violation of prior court order, was not advised of the Federal Form option.

75.     In 2018, LULAC and ASA sued the-Secretary of State in *LULAC v. Regan*, No. 2:17-cv-04102-DGC (D. Ariz.), alleging that the dual-registration system violated the NVRA and the United States Constitution.

76.      The *LULAC* parties reached a consent decree in which the Secretary of State agreed not to condition voter registration based on the arbitrary distinction of whether a voter used the State Form or the Federal Form to apply for voter registration.

77.     The *LULAC v. Reagan* consent decree established, in relevant part, that Arizona would (a) register eligible applicants whose registration was not accompanied by documentary proof of citizenship and whose citizenship could not be verified through the

Motor Vehicle Division to the Federal-Only Voter List and (b) provide a ballot to vote in all available federal elections to all registered voters on the Federal-Only Voter List. *See* Consent Decree, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC, ECF No. 37 (D. Ariz. June 18, 2018).

78. The Secretary codified the consent decree framework in the Arizona Elections Procedures Manual.

79. HB 2492 abrogates the consent decree and reinstates the prior arbitrary system under which voter registration is conditioned on whether a voter submits the State Form or Federal Form.

80. Under HB 2492, if an eligible voter provides DPOC at the time of registration applies using a State Form or Federal Form, they can vote in all available local, state, and federal elections.

81. If an eligible voter without DPOC submits the Federal Form, the voter will be registered to vote only in certain federal elections, as described below.

82. But if that same voter applies using the State Form and does not provide DPOC, HB 2492 instructs that their registration be rejected outright.

83. This arbitrary distinction based on paperwork is unconstitutional and requires the Secretary to violate a federal consent decree.

84. Additionally, nothing in HB 2492 requires that rejected State Form applicants be advised of the Federal Form option, in violation of their federal rights and prior court order. *See Gonzalez v. Arizona*, No. 06-cv-1268, 2013 WL 7767705, at *1 (D. Ariz. Sept. 11, 2013).

***Severe and Disparate Restrictions on Federal-Only Voters***

85.   HB 2492 further discriminates against and imposes a severe, undue, and discriminatory burden on the class of eligible Arizona voters who have exercised their right to register for federal elections without supplying DPOC.

86.   Before HB 2492, an eligible voter registered on the Federal-Only Voter List received a ballot to vote in all relevant federal elections and was treated the same in all other respects as a registered voter on the Full Ballot Voter List.

87.   As mandated by federal law and *LULAC v. Reagan* consent decree, registered voters on the Federal-Only Voter List are entitled to use Arizona's early voting opportunities and to vote in presidential and congressional elections.

88.   HB 2492 arbitrarily discriminates against eligible, registered voters on the Federal-Only Voter Lists.

89.   First, HB 2492 denies this class of eligible, registered voters the right to vote by mail, even if they are not physically present in the State to cast a ballot, and denies their right to vote early, on an equal basis as other Arizona voters.

90.   Second, HB 2492 denies this class of eligible, registered voters the right to vote in presidential elections.

91.   HB2492 singles out this class of eligible, registered voters for discriminatory treatment by restricting them to voting only in-person on election day and only in congressional elections.

92.     HB 2492's arbitrary, discriminatory and burdensome limits on voting for registrants on the Federal-Only Voter List violate federal constitutional and statutory rights.

### Discrimination Against Naturalized U.S. Citizen Voters

93.     HB 2492 compels election officials to reject valid voter registration applications from eligible voters based on vague criteria and using faulty inputs from databases that are known to have unreliable citizenship data and, in practice, target naturalized U.S. citizens.

94.     HB 2492 mandates that election officials "use all available resources to verify the citizenship status" of a registration applicant or currently registered voter, without any requirement for the veracity of those open-ended "available resources."

95.     The resources that HB 2492 mandates election officials check for U.S. citizenship information are notoriously unreliable and contain stale and faulty data that do not accurately reflect citizenship status.

96.     Included among the "available resources" are databases from Arizona's Motor Vehicles Division, the Social Security Administration, a National Association for Public Health Statistics and Information Systems, and "any other state, city, town, county or federal database."

97.     None of these databases are designed to contain or reflect current U.S. citizenship status.

98.     In Arizona, a person's driver's license does not expire until the licensee reaches age 65. Thus, a driver's license can be valid for nearly *fifty years*.

99.     In recent years, between 12,000 and 15,000 Arizonans have naturalized *each year*.

100.    Arizona Motor Vehicle Division data that a person was not a U.S. citizen at the time they were issued a driver's license or identification card is not probative of whether they are a U.S. citizen today.

101.    Nonetheless, HB 2492 requires county recorders to reject the voter registration application of an individual whose MVD record shows they were not a U.S. citizen at the time they obtained their license or non-driver identification card.

102.    Any election official who fails to comply with this requirement faces potential felony prosecution.

103.    HB 2492's mandated error-prone database checks will lead to inaccuracies and result in election officials rejecting voter registration applications for numerous eligible Arizona voters.

104.    This system will fail to reliably identify non-U.S. citizens and instead will discriminate against naturalized U.S. citizens.

### *Harassing Investigations and Wrongful Prosecutions*

105.    HB 2492 unlawfully subjects eligible, registered voters to targeted harassment and criminal investigation and prosecution by the Arizona Attorney General.

106.    HB 2492 requires the Defendant Secretary of State to provide the Attorney General with "a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship" for the purpose of hunting among lawfully registered voters searching for alleged noncitizens on the rolls.

107.   HB 2492 subjects these voters to harassment and criminal investigation under a vague and overbroad mandate that the Attorney General "use all available resources" to investigate and prosecute registered voters based on evidence that they are not U.S. citizens, despite the fact that the identified resources do not have reliable or current data about U.S. citizenship.

108.   The "resources" HB 2492 lists as required references for the Arizona Attorney General to check for U.S. citizenship data are the same notoriously unreliable databases identified above known to contain stale and faulty data that do not accurately reflect current citizenship status.

109.   Using these outdated and inaccurate inputs or any other purported "available resources," HB 2492 subjects these eligible voters to harassment and intimidation by the Arizona Attorney General simply because they are naturalized rather than native-born U.S. citizens.

### *HB 2492 Imposes Severe, Arbitrary, and Discriminatory Burdens*

110.   HB 2492's severe and undue burdens fall disproportionately on voters who have fewer resources, have less access to the tools and assistance necessary to comply with the law's many confusing and restrictive requirements, and who are more likely to have experienced past and present discrimination.

111.   Millions of Americans lack ready access to documents to prove their U.S. citizenship. For example, statistics published by the U.S. Department of State indicate that approximately 56% of Americans lack a valid U.S. passport. A 2006 study showed that 5-6% of Americans lacked access to both a U.S. passport and a birth certificate.

112.   DPOC requirements are particularly burdensome for elderly people, including African Americans born during the era of *de jure* segregation, who may not have been born in hospitals and whose births may not have been officially recorded. For these voters, birth certificates may be impossible to obtain, and without a birth certificate, they may be unable to obtain other forms of DPOC.

113.   HB 2492 also imposes severe burdens on people who have changed their name, including through marriage. For example, the 2006 survey conducted by the Brennan Center demonstrated that as few as 48% of voting-age women with ready access to their birth certificate have a birth certificate that reflects their current name, and only 66% of voting-age women have access to any documentary proof of citizenship reflecting their current name.

114.   Low-income voters are particularly likely to lack access to DPOC and DPOR. For example, citizens earning less than $25,000 per year are more than twice as likely to lack access to DPOC than other Americans, and at least 12% of voting-age citizens who earn less than $25,000 per year do not have a readily available U.S. passport, naturalization document, or birth certificate. Low-income voters are also more likely to move more frequently and have difficulty maintaining and providing DPOR.

115.   The burden imposed by DPOC requirements on low-income voters is compounded by the financial obstacles to obtaining DPOC. The cost to obtain or replace U.S. citizenship documents can be insurmountable for some Americans; a birth certificate can cost as much as $30 in fees, a first-time application for a passport card costs $55, plus the cost of photos, and a replacement naturalization certificate costs $555.

116.    In addition to those fees, applicants for passports and birth certificates may need to obtain multiple additional documents to prove their U.S. citizenship or identity, which in turn require additional costs. In some instances, individuals must also bear the cost of traveling long distances, and taking off or losing hours at work, to obtain citizenship documents.

117.    Obtaining U.S. citizenship documents also takes time. The U.S. State Department estimates a processing time of ten to twelve weeks for passports. Many states take several weeks to fulfill birth certificate requests. For example, a mailed request for a birth certificate takes ten to twelve weeks to complete in New York and eight to ten weeks in Georgia. Those timelines can be expedited but doing so requires payment of an additional fee or travel to the relevant state—cost-prohibitive options that are not feasible for individuals who are struggling to afford even the base fee to obtain a birth certificate.

118.    According to the U.S. Census Bureau's American Community Survey, more than 3.2 million of Arizona's approximately 7.1 million residents were born in a State other than Arizona, and more than 428,000 are foreign-born naturalized citizens.

119.    HB 2492's DPOC and DPOR requirements put significant strain on voter registration work by state agencies and nonprofit civic organizations.

120.    Advocating for greater civic participation by conducting voter registration drives—activity the NVRA affirmatively encourages, *see* 52 U.S.C. § 20505(b)—is costly in time and resources, and HB 2492 makes Plaintiffs work more difficult and advocacy less effective.

121.   Even those eligible Arizonans who do have access to the specified documents establishing their U.S. citizenship or their current residence often do not carry them to locations where civic organizations conduct voter registration drives.

122.   Civic organizations likewise cannot be expected to carry expensive equipment necessary to scan those documents and attach them to completed voter registration applications in order to serve their mission participating in the voter registration process.

## PARTIES

### *Plaintiffs*

**Living United for Change in Arizona**

123. Living United for Change in Arizona ("LUCHA") is a nonpartisan, nonprofit membership organization based in Arizona. It is led by community members fighting for social, racial, and economic justice.

124. HB 2492 will negatively affect LUCHA's more than 93,000 members, many of whom are people of color, low income, students, and/or elderly voters, and are therefore significantly more likely to lack requirement documentation under HB 2492.

125. LUCHA's membership also consists of naturalized U.S. citizens who will be targeted for specific classifications and disfavored treatment under the requirements and processes established in HB 2492.

126. In advance of the 2020 election, LUCHA organized both in-person and virtual voter registration drives and educated voters about important deadlines, how voters could exercise and protect their right to vote, and issues and candidates on the ballot.

127. LUCHA plans to conduct the same voter registration and education activities for future elections. However, as a result of the requirements imposed by HB 2492, LUCHA must divert money, personnel, time, and resources away from other activities. Specifically, LUCHA must divert its scarce resources toward efforts to ensure that voters, particularly those who are low income, can navigate the DPOC, DPOR, and birthplace requirements mandated by HB 2492 and can obtain the necessary documentation to comply with the many changes in law.

128. LUCHA will spend more time training volunteers to educate voters about these new restrictions, create additional digital voter education campaigns to combat misinformation about these requirements, and conduct additional outreach to Spanish-speaking, tribal, and rural communities to ensure that these efforts are effective. These diversions will continue to occur until the 2022 election and beyond for as long as these requirements are in effect.

129. HB 2492's disparate treatment of otherwise eligible voters based on whether they list their birthplace and are able to provide DPOC and DPOR means that LUCHA's voter registration drive organizers must take additional time and training to inform voters of the many new changes in the law and the threats of criminal investigation and prosecution.

130. When one of LUCHA's members or assisted voters lack DPOC or DPOR, they will be ineligible to register and/or to vote under HB 2492's eligibility requirements.

131. LUCHA expects that many of its members and the community members that it seeks to register to vote will be intimidated and discouraged from registering to vote,

even though they are eligible, because of the unconstitutional limits imposed on the exercise of their franchise by HB 2492's requirements.

132. Because LUCHA conducts voter registration drives at community events with the goal of completing voter registrations on-site, potential LUCHA members and voters who do not have Arizona drivers' licenses and/or do not have DPOC or DPOR with them cannot fully participate.

133. Even if applicants happen to have DPOC or DPOR at a LUCHA voter registration drive, LUCHA must now incur costs and addition burdens to purchase and maintain mobile scanning and printing equipment to facilitate voter registration applications that comply with HB 2492.

134. As a result of Defendant's enforcement of the unconstitutional and unlawful provisions of HB 2492, LUCHA will be overburdened and unable to conduct successful voter registration drives; LUCHA will be forced to dedicate more resources and time in order to register the same number of members and voters; LUCHA will incur costs to purchase and maintain equipment to ensure its voter registration advocacy complies with HB 2492; and fewer LUCHA members and the voters LUCHA reaches will be able to successfully register to vote and then cast a ballot in all elections for which they are eligible.

**League of United Latin American Citizens**

135. Plaintiff League of United Latin American Citizens (LULAC) is the Arizona-based branch of the nation's oldest and largest national Latino civil rights organization. LULAC is a nonpartisan, nonprofit membership organization with a presence in most of the fifty states, including Arizona. Founded in 1929, LULAC works to advance the

economic condition, educational attainment, political influence, health and civil rights, including voting rights, of the Hispanic population of the United States.

136. LULAC members live across the State. LULAC has local councils throughout Arizona, including in Phoenix, San Luis, Tucson, Tempe, Yuma and other smaller communities.

137. LULAC's members in Arizona include naturalized U.S. citizens, low-income voters, students, and voters who move frequently or have changed their name.

138. LULAC's members in Arizona are adversely affected by the undue burdens HB 2492's policies place on eligible Arizona citizens. Over 400,000 eligible Latino citizens in Arizona, or nearly half of eligible Latinos in Arizona, are not currently registered to vote.

139. Voter registration activity is key to LULAC's mission of increasing civic participation of its members and Arizona voters. LULAC has committed and continues to commit time and resources to voter registration drives in Arizona.

140. Due to HB 2492's burdensome and confusing restrictions on voting and registration eligibility and processes, LULAC will be forced to divert its resources from its other programs supporting its mission. HB 2492 will force LULAC to redirect scarce funding to help voters comply with its new requirements. These diversions will continue to occur until the 2022 election and beyond for as long as these requirements are in effect.

141. HB 2492's disparate treatment of otherwise eligible voters based on whether they list their birthplace and are able to provide DPOC and DPOR means that voter

registration drive organizers must inform voters of the many new changes in the law and the threats of criminal investigation and prosecution.

142. When one of LULAC's members or assisted voters in Arizona lack DPOC or DPOR, they will be denied the right to register and the right to vote under HB 2492's eligibility requirements.

143. LULAC expects that many of its members and the community members that it seeks to register to vote will be intimidated and discouraged from registering to vote, even though they are eligible, because of the unconstitutional limits imposed on the exercise of their franchise by HB 2492's new requirements.

144. Since LULAC conducts voter registration drives on-site in communities with the goal of completing voter registrations on-site, potential voters who do not have Arizona drivers' licenses and/or do not have DPOC or DPOR with them cannot fully participate.

145. Even if applicants happen to have DPOC or DPOR at a LULAC voter registration drive, LULAC must now incur costs and addition burdens to purchase and maintain mobile scanning and printing equipment to facilitate voter registration applications that comply with HB 2492.

146. As a result of Defendant's enforcement of the unconstitutional and unlawful provisions of HB 2492, LULAC will be overburdened and unable to conduct successful voter registration drives; LULAC must dedicate and divert more resources and time in order to register the same number of members and voters; LULAC will incur costs to purchase and maintain equipment to ensure its voter registration advocacy complies with

HB 2492; and fewer LULAC members and the voters LULAC will be able to successfully register to vote and then cast a ballot in all elections for which they are eligible.

**Arizona Students' Association**

147. Plaintiff Arizona Students' Association ("ASA") is a nonpartisan, nonprofit membership organization based in Arizona. ASA is student led and represents the collective interest of the over 140,000 university students and over 400,000 community college students in Arizona. The organization advocates at the local, state, and national levels for the interests of students. As a part of its mission, ASA encourages students throughout Arizona to register to vote through voter registration activity. ASA has committed and continues to commit time and personnel to voter registration drives in Arizona.

148. ASA's members, students of numerous backgrounds throughout Arizona, are acutely harmed by the undue burdens HB 2492's requirements place on eligible Arizona citizens. Many students are young adults who are just becoming eligible to vote and therefore must register for the first time. Students in Arizona living on campuses often do not have easy access to their birth certificates or other underlying citizenship documentation. Students in Arizona move frequently and have less access to documents proving their place of residence.

149. Many students eligible to vote in Arizona have out-of-state driver's licenses that do not meet the statutory DPOC and DPOR requirements. Many other students cannot afford to pay for state IDs or driver's licenses.

150. ASA has regularly conducted and will continue to conduct voter registration drives in Arizona as a core part of ASA's mission. These voter registration drives focus on registering students, many of whom are first time voters and unfamiliar with the voter registration system. ASA conducts its voter registration drives on school sites throughout Arizona.

151. Due to HB 2492's burdensome and confusing restrictions on voting and registration eligibility and processes, ASA will be forced to divert its resources from its other programs supporting its mission. HB 2492 will force ASA to redirect scarce funding to purchase additional equipment and educational materials to help voters comply with the new voting and registration scheme, and to commit further staff and volunteer time and training to help guide voters through the additional requirements. These diversions will continue to occur until the 2022 election and beyond for as long as these requirements are in effect.

152. HB 2492's disparate treatment of otherwise eligible voters based on whether they list their birthplace and are able to provide DPOC and DPOR means that voter registration drive organizers must inform voters of the many new changes in the law and the threats of criminal investigation and prosecution.

153. When one of ASA's members or assisted voters lack DPOC or DPOR, they will be ineligible to register and to vote under HB 2492's eligibility requirements.

154.  ASA expects that many of its members and the community members that it seeks to register to vote will be intimidated and discouraged from registering to vote, even

though they are eligible, because of the unconstitutional limits imposed on the exercise of their franchise by HB 2492's requirements.

155. Because ASA conducts voter registration drives at schools with the goal of completing voter registrations on-site, potential ASA members and voters who do not have Arizona drivers' licenses and/or do not have DPOC or DPOR with them cannot fully participate.

156. Even if applicants happen to have DPOC or DPOR at an ASA voter registration drive, ASA must now incur costs and addition burdens to purchase and maintain mobile scanning and printing equipment to facilitate voter registration applications that comply with HB 2492.

157. As a result of Defendant's enforcement of the unconstitutional and unlawful provisions of HB 2492, ASA will be overburdened and unable to conduct successful voter registration drives; ASA will be forced to dedicate more resources and time in order to register the same number of members and voters; ASA will incur costs to purchase and maintain equipment to ensure its voter registration advocacy complies with HB 2492; and fewer ASA members and the voters ASA reaches will be able to successfully register to vote and then cast a ballot in all elections for which they are eligible.

**ADRC Action**

158. ADRC Action is a nonpartisan, nonprofit organization based in Arizona. It is dedicated to empowering community members and encouraging civic participation. ADRC Action advocates for equitable representation for all Arizonans and works closely with community leaders to protect our democracy and is committed to dismantling

structural barriers to democratic participation, supporting community self-determination,

and investing in local leadership.

159.   ADRC Action is the sponsor of the Arizona ballot measure committee

Arizonans for Free and Fair Elections (ADRC Action).  This ballot measure committee is

circulating petition I-16-2022, which

> Restores permanent early voting list. Provides same-day, automatic, and online voter registration. Makes voting easier for disabled people. Reduces cancelation causes for voter registration. Ensures voters can vote in any in-county precinct Expands polling places on Indian lands, voter registration, early voting, mail voting, early voting sites, and voting rights for some under guardianship. Allows entrusting another person to return one's voted early ballot. Specifies process for correcting signature problems on early voting envelopes. Allows Clean Elections grants for election administration. Specifies sufficient requirements for voter registration, identification, and early voting. Safeguards against registering ineligible people to vote. Allows providing refreshments to waiting voters. Restricts gifts from lobbyists, reduces privately funded candidates' contribution limits, and increases funds available to Clean Elections candidates. Requires clear explanation of statewide ballot measures. Limits judicial review of initiative and referendum petitions and protects signatures from elimination based on: county of the signer; another writing signers name, address or date; circulators failure to respond to a subpoena or strictly comply with technical requirements. Enhances ballot privacy. Restricts reviews and subpoenas concerning ballots and election material. Stabilizes presidential election process. Creates voluntary tax checkoff. Increases lobbyist registration fees and corporate minimum tax for some.

Initiative, Referendum and Recall Applications, Overview I-16-2022, *available at*

https://apps.arizona.vote/info/irr/2022-general-election/33/0.

160.  ADRC Action supports voter registration activities in the State of Arizona.

As a result of Defendant's enforcement of the unconstitutional and unlawful provisions of

HB 2492, will be forced to divert its resources from its other programs supporting its

mission. HB 2492 will force ADRC Action to redirect scarce funding to help voters comply with the new voting and registration scheme, and to commit further staff and volunteer time and training to help guide voters through the additional requirements. These diversions will continue to occur until the 2022 election and beyond for as long as these requirements are in effect.

### *Defendant*

161.  Defendant Katie Hobbs is the Arizona Secretary of State, a statewide elected public officer, and is named in her official capacity.

162.  The Secretary of State serves as the Chief Election Officer for Arizona. Ariz. Rev. Stat. § 16-142. The Secretary of State is the public officer responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration. *Id.*; *see also Arizona Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427 at *6 (D. Ariz. Nov. 3, 2016) ("The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines. . . . Any person who does not abide by the Secretary's rules is subject to criminal penalties."). She is sued in her official capacity.

### CLAIMS

### Count 1: Undue Burden on the Right to Vote, First and Fourteenth Amendment (42 U.S.C. § 1983)

163.  Plaintiffs restate and incorporate by reference all allegations above as though fully set forth in this paragraph.

164. "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). The Supreme Court has recognized that "voting is of the most fundamental significance under our constitutional structure" and the right to an effective vote is protected by the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *See Burdick v. Takushi*, 504 U.S. 428, 433-44 (1992). Indeed, the right to vote is the "fundamental political right . . . preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

165. Further, voting and participation in the electoral process is a form of speech and expression. It is the ultimate form of political speech and association and is entitled to First Amendment protection. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 728-29 (9th Cir. 2015) ("Restrictions on voting can burden equal protection rights as well as interwoven strands of liberty protected by the First and Fourteenth Amendments—namely, the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.") (internal citations and quotations omitted).

166. When analyzing the constitutionality of a restriction on voting, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to

1   burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

2   167. HB 2492's requirements, together and individually, impose severe and undue

3   burdens on eligible Arizonans' right to vote in violation of the Equal Protection Clause of

4   the Fourteenth Amendment and the First Amendment.

5   168. HB 2492 conditions the right to register and to vote on what type of

6   registration form—the State Form or the Federal Form—an eligible voter happens to use.

7   169. HB 2492 conditions the right to register on a voter's willingness to disclose

8   her place of birth, an immaterial requirement that will intimidate naturalized citizen voters

9   from registering to vote.

10   170. HB 2492 further conditions voters' eligibility to exercise their right to

11   register and their right to vote on whether the voter can access, copy, and submit

12   documentary proof of residence and of citizenship during the registration and/or voting

13   stages.

14   171. HB 2492 prohibits a class of eligible, registered voters on the Federal Only

15   Voter List from voting using any method other than in-person on election day, and bars

16   that class of voters from voting in presidential election altogether.

17   172. HB 2492 also subjects voters to rejection of their voter registration

18   applications altogether based on faulty and stale data on U.S. citizenship.

19   173. HB 2492 further subjects voters to harassing and intimidating investigation

20   and prosecution based on faulty and stale data on citizenship, disincentivizing eligible

21   Arizonans from registering to vote.

22

23

174. HB 2492's stringent restrictions are severe. Indeed, at numerous stages they result in the complete denial of eligible voters' right to register and to vote. *See Dudum v. Arntz*, 640 F.3d 1098, 1108 (9th Cir. 2011) (citing *Ayers-Schaffner v. DiStefano*, 37 F.3d 726 (1st Cir. 1994)) (recognizing that a state policy in which "otherwise eligible voters were not allowed to vote in a determinative election" constitutes a "severe burden on the excluded voters' right to vote").

175. Further, HB 2492's restrictive and undue requirements on registering and voting disproportionately impose more significant burdens on certain categories of voters––for example, naturalized U.S. citizens, Tribal members, college and university students, low-income voters, elderly voters, racial and ethnic minorities, voters who frequently move, and voters who have changed their legal name, such as married women.

176. The challenged HB 2492 provisions are subject to strict or heightened scrutiny because they impose severe and disparate burdens on the right to vote, in some instances requiring complete denial of the right to vote for eligible and registered Arizona voters.

177. The challenged HB 2492 provisions do not advance any legitimate regulatory interest. They serve little purpose other than to prevent qualified Arizona citizens from voting in eligible elections and to deter civic organizations from conducting voter registration drives.

178. The State's purported goal of increasing the public's confidence in elections are at best pretextual, and these restrictions are more likely to undermine than reinforce confidence in Arizona's elections.

179. Regardless, furthering those interests does not necessitate burdening Plaintiffs' right to vote in this severe and disparate manner.

180. HB 2492's requirements cannot withstand even rational basis review, much less the strict or heightened scrutiny applied prevent severe and undue burdens on the right to vote.

### Count 2: National Origin Discrimination, Fourteenth Amendment
### (42 U.S.C. § 1983)

181. Plaintiffs restate and incorporate by reference all allegations above as though fully set forth in this paragraph.

182. HB 2492 discriminates between Arizona citizens based on their national origin by imposing disparate requirements and policies affecting naturalized U.S. citizens, in violation of the Equal Protection Clause. *Hernandez v. Texas*, 347 U.S. 475, 482 (1954). Such classifications based on national origin are inherently suspect and subject to strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 371-72 (1971).

183. HB 2492 classifies and subjects naturalized U.S. citizens to disfavored treatment by imposing more burdensome registration and voting requirements, requiring attestation of their place of birth to register, and subjecting them to wrongful and harassing criminal investigations and prosecutions.

184. HB 2492's discriminatory classifications fail strict scrutiny, or any lesser level of review.

185. The challenged HB 2492 provisions are not narrowly tailored to serve any compelling state interest. HB 2492's provisions do not advance any legitimate regulatory

interest and serve little purpose other than to subject naturalized U.S. citizen voters to disfavored treatment and prevent naturalized Arizona citizens from voting.

186. The State's purported goal to increase the public's confidence in Arizona's elections is at best pretextual, and HB 2492's discriminatory restrictions are more likely to undermine than reinforce confidence in Arizona's elections.

187. HB 2492's requirements cannot withstand even rational basis review, much less the heightened scrutiny applied to discriminatory classifications and restrictions on the right to vote.

### Count 3: Unlawful Discrimination, Fourteenth Amendment
### (42 U.S.C. § 1983)

188. Plaintiffs restate and incorporate by reference all allegations above as though fully set forth in this paragraph.

189. HB 2492 intentionally and arbitrarily discriminates against eligible registered voters based on whether they have applied using a State Form or a Federal Form. Based on this arbitrary difference, in many cases eligible citizens seeking registration using the Federal Form will be registered while similarly situated eligible citizens seeking registration using the State Form will not be registered.

190. HB 2492 intentionally and arbitrarily discriminates against eligible, registered voters on Arizona's Federal Only Voter List. Under HB 2492, eligible and registered voters placed on the Federal Only Voter List are prohibited from using Arizona's early voting opportunities and from voting in presidential elections; they are constrained to exercise their right to vote only in-person on election day and only to cast a ballot for at

most two congressional offices. Similarly situated eligible voters for federal elections are able to access Arizona's early voting opportunities and to vote for all available federal offices.

191. HB 2492's discriminatory and arbitrary classifications fail strict scrutiny, which applies to arbitrary treatment of voters in accessing the fundamental right to vote. HB 2492's discriminatory and arbitrary classifications also fail rational basis review.

192. The challenged HB 2492 provisions are not narrowly tailored to serve any compelling state interest. Indeed, HB 2492's provisions do not actually advance any legitimate regulatory interest, and serve little purpose other than to subject eligible voters to disfavored treatment based on which voter registration form they use and prevent eligible Arizona citizens from voting.

193. The State's purported goal to increase the public's confidence in elections is at best pretextual, and HB 2492's discriminatory restrictions are more likely to undermine than reinforce confidence in Arizona's elections.

194. HB 2492's requirements cannot withstand even rational basis review, much less the heightened scrutiny applied to discriminatory classifications and restrictions on the right to vote.

### Count 4: Immaterial Omission On Voter Registration Form
### (52 U.S.C. § 10101(a)(2)(B)).

195. Plaintiffs restate and incorporate by reference all allegations above as though fully set forth in this paragraph.

196. The Civil Rights Act of 1964 prohibits states and persons acting under color of state law from denying the right to vote to any individual "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

197. HB 2492 requires state and local officials to reject voter registration applications and deny the right to vote to any individual who omits their place of birth from their state voter registration form.

198. An individual's place of birth has no bearing on any qualification for voting under Arizona state law.

199. HB 2492's Birthplace Requirement violates the Civil Rights Act of 1964.

## PRAYER FOR RELIEF

WHERFORE, Plaintiffs respectfully pray that this Court:

(1)     Enter judgment in favor of Plaintiffs and against Defendant on the claims for relief as alleged in this Complaint;

(2)     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the challenged HB 2492 provisions, facially and as-applied, violate the Equal Protection Clause of the Fourteenth Amendment and the First Amendment;

(3)      Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the Birthplace Requirement in HB 2492 violates the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

(4)     Grant Plaintiffs preliminary and/or permanent injunctive relief by:

       a.     Ordering that Defendant is prohibited from enforcing the challenged HB 2492 provisions with respect to any election;

       b.     Ordering that Defendant is prohibited from rejecting or causing to be rejected any voter registration or voter registration application on the grounds of the challenged HB 2492 provisions;

       c.     Ordering that Defendant is prohibited from transmitting any voter registration list for the purpose and/or effect of investigating and/or prosecuting voters on the grounds of the challenged HB 2492 provisions;

(5)     Retain jurisdiction over the Defendant for such period of time as may be appropriate to ensure the Defendant's compliance with relief ordered by this Court;

(6)     Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(7)     Grant Plaintiffs such other and further relief as may be just and equitable.

Date: March 31, 2022                              Respectfully submitted,

*James E. Barton II*

**BARTON MENDEZ SOTO**
James E. Barton II, AZ Bar No. 023888
401 W. Baseline Road
Suite 205
Tempe, AZ 85283
480-418-0668
james@bartonmendezsoto.com

**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Molly Danahy*
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org

*Attorneys for Plaintiffs*

*\*Pro Hac Vice Motion forthcoming*

38